**CITY OF WESTMINSTER, a Colorado municipal corporation, Plaintiff–Appellant,**

v.

**CENTRIC–JONES CONSTRUCTORS, a Colorado corporation; Centric–Jones Co., a Colorado corporation; Nucon Construction Corp., a corporation; J A Jones Construction Co., a corporation; Jones Group, Inc., a corporation; Travelers Casualty & Surety Co., a corporation; Aetna Casualty & Surety Co., a corporation; and Bates Engineering, Inc., a Colorado corporation, Defendants–Appellees,**

and

**Centric–Jones Co., a Colorado limited partnership, Third–Party–Plaintiff and Cross–Appellant,**

v.

**Fischbach Masonry, Inc., a Colorado corporation, and Reliance Insurance Company, a foreign corporation, Third–Party–Defendant and Cross–Appellee.**

Nos. 01CA0502, 02CA0602.

Colorado Court of Appeals, Div. II.

Sept. 11, 2003.

Certiorari Granted Nov. 8, 2004.

Hall & Evans L.L.C., Jeffery B. Stalder, Alan Epstein, Denver, Colorado; Martin R. McCullough, City Attorney, Jeffrey M. Betz, Assistant City Attorney, Westminster, Colorado, for Plaintiff-Appellant.

Oviatt, Clark & Gross, L.L.P., Thomas C. Clark, Wheat Ridge, Colorado; Spriggs & Hollingsworth, Douglas L. Patin, Peter J. Skalaban, Jr., Washington, DC, for Defendants-Appellees Centric-Jones Constructors, Centric-Jones Co., Nucon Construction Corp., J A Jones Construction Co., and Jones Group, Inc. and Third-Party-Plaintiff and Cross-Appellant.

Pendleton Friedberg Wilson & Hennessey P.C., L. Jay Labe, Michelle M. Merz, Denver, Colorado, for Defendant-Appellee Travelers Casualty & Surety Co. and Aetna Casualty & Surety Co.

White & Steele, P.C., Robert R. Carlson, James M. Meseck, Denver, Colorado, for Defendant-Appellee Bates Engineering, Inc.

Levy Morse & Wheeler, P.C., Marc R. Levy, Ivan A. Sarkissian, Englewood, Colorado, for Third-Party-Defendant and Cross-Appellee Fischbach Masonry, Inc.

Wolf & Slatkin, P.C., Albert B. Wolf, Denver, Colorado, for Third-Party-Defendant and Cross-Appellee Reliance Insurance Company.

Opinion by Judge WEBB.

In this construction dispute, plaintiff, the City of Westminster (City), appeals the judgments entered against it and in favor of defendants, Centric-Jones Constructors and its affiliates (collectively Jones); Travelers Casualty & Surety Company; Aetna Casualty & Surety Company; and Bates Engineering, Inc. Jones cross-appeals the judgments entered against it and in favor of third-party defendants, Fischbach Masonry, Inc. and Reliance Insurance Company, only to the extent of further proceedings between the City and Jones. We affirm.

The City, as owner, and Jones, as prime contractor, entered into a contract to expand the City's water treatment plant. Travelers and Aetna (collectively Travelers) were sureties to Jones. Fischbach was a subcontractor to Jones and Reliance was its surety. Bates and other engineering firms performed all design work for the City.

The project involved design and construction of three structures, two of which are at the center of this appeal: a five-million-gallon, below ground concrete tank to hold treated water (clearwell); and a high service pumping station to move the treated water into the City's distribution system (HSPS).

In 1995, Jones began construction using designs and specifications prepared by the engineering firms. Work continued beyond the scheduled completion date. Disagreements among the City, Jones, and the engineering firms arose over water leakage from the clearwell into the underlying fill, wetting and destabilization of bedrock below the fill, and resulting movement of the clearwell. Other disagreements arose over structural problems in the walls and foundation of the nearby HSPS.

In late 1997, with most of the work done, the City terminated the contract and asserted a claim against Travelers under the performance bond. Travelers denied the claim on the basis of improper contract termination.

The City then hired new engineers. They recommended that the City demolish and rebuild the clearwell using a significantly different foundation design, demolish and rebuild the masonry walls of the HSPS to new specifications, and change the HSPS foundation. The City did so, although expenses substantially exceeded the original construction costs and the new specifications added features to both the clearwell and the HSPS.

The City sued Jones, Bates, and the other initial engineering firms for breach of contract and negligence, claiming as damages

the entire cost of removing, redesigning, and rebuilding the clearwell; redesigning and rebuilding the HSPS walls; and modifying the HSPS foundation. The City also sued Travelers for breach of the performance bond and bad faith investigation of the City's claim.

Jones counterclaimed for lost profits from unfinished work based on wrongful termination of the contract and for nonpayment for work performed to the termination date. Jones also filed a third-party complaint against Fischbach and Reliance seeking indemnification for damages arising from work done by Fischbach on the HSPS walls.

The court entered summary judgments dismissing the claims against Bates, and in favor of Jones on the City's negligence claim. The other engineering firms then settled with the City.

At trial, after the City rested its case-in-chief, the court directed verdicts for all defendants and third-party defendants. The court concluded that the City had failed to present a reasonable basis on which the jury could apportion damages based on either the benefit of the City's bargain with Jones or Jones' breaches.

At the conclusion of its deliberations on Jones' counterclaims, the jury did not complete the verdict form on the wrongful termination counterclaim. Instead, it completed the verdict form on the other counterclaim and awarded Jones payment for work performed.

The trial court awarded substantial costs to all defendants and third-party defendants. A separate appeal and a cross-appeal of the cost awards were consolidated with this appeal.

## I. *Directed Verdict for Jones*

The City first argues that the trial court erred in directing a verdict based on its failure to prove damages. We disagree.

■ We review a directed verdict de novo. *Campbell v. Burt Toyota–Diahatsu, Inc.,* 983 P.2d 95 (Colo.App.1998).

■ A motion for directed verdict should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. If a trial judge concludes that a reasonable jury could return a verdict in the plaintiff's favor, a defendant's directed verdict motion cannot be granted. The trial judge must view the evidence in a light most favorable to the nonmoving party. *Fair v. Red Lion Inn,* 943 P.2d 431 (Colo. 1997).

■ A party attempting to recover for breach of contract must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages. *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992).

Here, the parties dispute only the sufficiency of the City's damages evidence, and we examine separately the claims for actual damages and for liquidated delay damages.

### A. Actual Damages

The trial court concluded that the City failed to provide any basis on which the jury could apportion damages, either between the benefit of the City's bargain with Jones and additional benefit to the City from rebuilding the structures to new specifications, or between particular breaches by Jones and design errors of others for which Jones was not responsible. We agree.

■ To survive a directed verdict motion challenging proof of actual damages, the plaintiff in a breach of contract action must have presented evidence of both the existence and the cause of damages. *See Roberts v. Adams,* 47 P.3d 690 (Colo.App.2001). The plaintiff must also provide the factfinder with a reasonable basis for calculating actual damages in accordance with the relevant measure. *Husband v. Colo. Mountain Cellars, Inc.,* 867 P.2d 57 (Colo.App.1993). However, proof of damages with mathematical certainty is not required. *Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985).

■ The general measure of damages for breach of a construction contract is that

amount required to place the owner "in the same position he would have occupied had the breach not occurred." *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993); *see also McDonald's Corp. v. Brentwood Center, Ltd.*, 942 P.2d 1308, 1310 (Colo. App.1997). This rule protects defendants against speculative awards that would otherwise provide plaintiffs with an economic windfall. *See Dep't of Health v. Donahue*, 690 P.2d 243 (Colo.1984).

■ Where only rebuilding a defective building will provide an injured party with the benefit of its bargain, costs to rebuild rather than repair may be a reasonable measure of damages. *Gold Rush Invs., Inc. v. G.E. Johnson Constr. Co.*, 807 P.2d 1169 (Colo.App.1991). Costs of rebuilding a defective structure to new specifications may also be reasonable, *Hendrie v. Bd. of County Comm'rs*, 153 Colo. 432, 387 P.2d 266 (1963), even if they exceed the costs to repair defects. *Worthen Bank & Trust Co. v. Silvercool Serv. Co.*, 687 P.2d 464 (Colo.App.1984).

Nevertheless, the reasonableness of rebuilding a defective structure, even to new specifications and at increased cost, does not permit a plaintiff to recover more than the benefit of its bargain. *See Hendrie v. Bd. of County Comm'rs, supra* (engineering costs to redesign swimming pool and costs to build different foundation system deducted from award of costs to rebuild pool to new design). Thus, where the plaintiff's own evidence of damages includes advantage beyond the benefit of the bargain, the plaintiff must present more than an unitemized total cost of replacement. *See Roberts v. Adams, supra* (evidence of the total cost to replace carpet throughout the plaintiff's home insufficient where only carpet in the bedroom and stairs covered by the warranty at issue).

■ Damages must also be "traceable to and the direct result of the wrong sought to be redressed." *Husband v. Colo. Mountain Cellars, Inc., supra*, 867 P.2d at 59–60 (quoting *Runiks v. Peterson*, 155 Colo. 44, 45, 392 P.2d 590, 591 (1964)); *see also Isaac v. Am. Heritage Bank & Trust Co.*, 675 P.2d 742 (Colo.1984).

Contractors and subcontractors in cost overrun disputes sometimes seek to recover all costs of completion, although multiple causes contributed to the overrun. Recovery under this so-called "total cost" theory is disfavored, *Amelco Elec. v. City of Thousand Oaks*, 27 Cal.4th 228, 115 Cal.Rptr.2d 900, 38 P.3d 1120 (2002), and has generally been rejected unless a "basis appears for even an educated guess as to the increased costs suffered by plaintiffs due to that particular breach or breaches [by the defendant] as distinguished from those causes from which defendant is contractually exempt from responding in damages." *Lichter v. Mellon–Stuart Co.*, 305 F.2d 216, 219 (3d Cir.1962).

Some jurisdictions employ a four-part test under which the trial court must initially determine whether total cost is an appropriate measure of damages: (1) proving actual losses directly is impractical; (2) the bid is reasonable; (3) actual costs are reasonable; and (4) the injured party was not responsible for the added costs. *See, e.g., Amelco Elec. v. City of Thousand Oaks, supra.*

In *Amelco,* the court applied this test in rejecting the contractor's total cost claim because the contractor failed to satisfy the fourth element, that it was not responsible for the added expenses. The court explained that, even "[i]n complex situations that may involve multiple [parties], the 'plaintiff must prove not only that he or she was not liable for the extra cost in this situation but that the defendant was responsible.' " *Amelco, supra*, 27 Cal.4th at 246, 115 Cal.Rptr.2d 900, 38 P.3d at 1131 (quoting Aaen, *The Total Cost Method of Calculating Damages in Construction Cases*, 22 Pacific L.J. 1185, 1202 (1991)); *see also United States v. Citizens & S. Nat'l Bank*, 367 F.2d 473 (4th Cir.1966).

We have found no Colorado case discussing this total cost theory. However, in our view the fourth element—that the injured party is not responsible for added costs—is consistent with the general rule that uncertainty in the amount of damages does not preclude recovery, but "[u]ncertainty as to the cause from which they proceed" supports rejection of a damage claim as "too remote, or conjectural or speculative." *Donahue v.*

*Pikes Peak Auto. Co.*, 150 Colo. 281, 287, 372 P.2d 443, 446 (1962)(quoting *Rule v. McGregor*, 117 Iowa 419, 90 N.W. 811 (1902)). *See generally Dobbs on Remedies* § 12.4(2) (2d ed.1993).

Here, as owner, the City seeks the total costs of removing, redesigning, and rebuilding defective construction. Total cost cases typically involve claims for excess completion costs by contractors against owners or by subcontractors against prime contractors. Nevertheless, these cases are helpful because they address the tension presented here between evidence of overall reasonableness of remedial action and multiple causes of harm alleged.

 The City presented an expert's opinion that all costs were reasonable. Viewed in the light most favorable to the City, the evidence also showed that the City improved its position with different structural elements not part of the original design and corrected undisputed deficiencies in the original design for which Jones was not responsible.

Even accepting the opinion that all costs were reasonable, an award of total costs would still give the City more than the benefit of its bargain had Jones completed both structures according to the original design, and would also compensate the City for mistakes by parties other than Jones.

As rebuilt, the clearwell now sits on a different foundation system involving piers drilled into the bedrock, has a much thicker concrete floor directly connected to the piers rather than resting on the underlying fill, and includes a cement wall baffle system inside the tank to increase chlorine absorption by the treated water. No expert expressly testified that mishandling of the fill by Jones and wetting of the bedrock required the foundation and floor to be redesigned. Even if the City's evidence of overall reasonableness permits this inference, the baffles benefit the City, they first appear only in the new design, and they were not traced to any construction error of Jones.

Yet the City offered no evidence that apportioning some costs to the baffles was impossible, that this cost was de minimis, or that the total costs of rebuilding the clearwell

to new specifications were comparable to costs that would have been incurred if the City had rebuilt to the original specifications.

As partly rebuilt, the HSPS also included design changes that improved the structure, to the City's benefit. The original wall design and window configuration violated building code requirements on wind force resistance, and the completed structure would have violated the building code even if properly built by Jones. The City's architects also mistakenly allowed Fischbach to leave a plastic material inside concrete blocks, which further weakened the walls in addition to weakening from Fischbach's grouting errors. The new design corrected the code violation by changing apertures in the walls and including additional structural support, and expressly required that all plastic material be removed from the concrete blocks before grouting.

The City also offered no evidence apportioning costs based on either Jones' breaches or betterment of the HSPS. Instead, the City asserts its evidence showed that segregating costs between design and supervision errors versus construction defects was impossible. Even if The City were correct as to the impossibility of apportioning costs of the foundation modifications, taking the evidence in the light most favorable to the City and giving it the benefit of all reasonable inferences therefrom, we discern no record support for this position as to the new design of the walls. Nor does the record suggest that changes to the walls, which initially cost approximately $80,000 as compared to the City's claim of over $800,000 for the entire HSPS work, were only de minimis.

In our view, nothing in this record excuses the City from providing the jury with a reasonable, albeit imprecise, basis on which to apportion damages to either loss of the benefit of its bargain with Jones or particular breaches by Jones. Because the redesigning and rebuilding took several years and involved advice to the City from multiple professionals, the City was in a better position than Jones to allocate redesign and rebuilding costs to correcting Jones' construction defects, to the fault of other parties, and to additional benefit to the City. *See Huber,*

*Hunt & Nichols, Inc. v. Moore*, 67 Cal. App.3d 278, 309, 136 Cal.Rptr. 603, 622 (1977)("Contractor could have maintained a proper accounting system to establish its alleged damage proximately caused by [defendant's] alleged negligence, if it had desired to do so").

Accordingly, we conclude the City did not present a reasonable basis on which the jury could apportion damages. We also reject the City's other challenges to the directed verdict.

■ The City argues that the trial court should have allowed the case to proceed on damages for recovery of the initial cost to build the clearwell and the HSPS. However, the City did not raise this issue in opposing the directed verdict motion or in its opening brief. We do not consider arguments raised for the first time in a reply brief. *Flagstaff Enters. Constr. Inc. v. Snow*, 908 P.2d 1183 (Colo.App.1995); *see also Beauprez v. Avalos*, 42 P.3d 642 (Colo.2002)(arguments not presented to the trial court).

The City further contends that lack of evidence apportioning damages was not a fatal defect in its prima facie case, but instead was Jones' burden under the affirmative defense of mitigation. According to the City, Jones should have been required to prove the extent to which recovery of the entire removal, rebuild, and redesign costs placed the City in a better position than if Jones had properly performed the contract.

■ Jones contends, and we agree, that even accepting the reasonableness of the City's entire cost to rebuild, the City is not thereby excused from providing some basis for the jury to allocate damages to the benefit of its bargain and the breaches by Jones. Hence, shifting this burden to Jones, under the affirmative defense of failure to mitigate, would disregard the deficiencies in the City's damages case.

■ Failure to mitigate damages is an affirmative defense under C.R.C.P. 8(c) on which the defendant bears the burden of proof. *Fair v. Red Lion Inn, supra.* The City cites no Colorado case, and we have found none, excusing a plaintiff from apportioning damages to the benefit of its bargain

and breaches by the defendant because these issues could be raised later by the defendant under failure to mitigate.

The City's reliance on *State Property & Buildings Commission v. H.W. Miller Construction Co.*, 385 S.W.2d 211 (Ky.1964), is misplaced. *State Property* did not address the interplay between a plaintiff's burden to apportion damages and the defense of failure to mitigate. Rather, the court noted that the plaintiff would not receive an economic windfall from an award of all costs to rebuild the building to new specifications because the costs of rebuilding to the initial specifications would be substantially the same.

■ Moreover, mitigation involves a plaintiff's failure to take reasonable steps to reduce damages. *Fair v. Red Lion Inn, supra.* Here, Jones does not argue that the City's damages case failed because the City failed to take reasonable steps to reduce its losses, and at this stage we must accept the City's evidence of reasonableness.

Further, we reject the City's assertion that Jones was protected from overpayment because damages awarded to the City would be reduced by the City's settlement with the initial engineers. Although this result often obtains among joint tortfeasors, § 13–50.5–101 et seq., C.R.S. (2002), the City cites no Colorado contract law that a defendant's offset for settlement by the plaintiff with a nonparty cures the plaintiff's failure to give the jury a reasonable basis for apportioning damages, and we have found none.

Even if we assume the settlement with the initial engineers was reasonable, the City's breach of contract and negligence claims against those engineers afford no basis for also assuming that the settlement payment includes the additional benefit conferred on the City from the new structural elements. Moreover, because the claims against Bates were dismissed without Bates making payment to the City, despite some evidence of its negligence, Jones would have no protection against the possibility of a verdict awarding damages against it for harm, if any, caused to the City by Bates.

Accordingly, we conclude that the trial court properly directed a verdict against the City as to actual damages.

### B. Liquidated Damages

The contract between the City and Jones provided $1,000 per day in liquidated damages for each calendar day following the designated completion date that the project was not operational. The City presented testimony that it was entitled to recover $1,994,500 for approximately six years of delay. However, the evidence also showed that the delay was caused in part by the City's decision to redesign the structures, including correction of errors by the initial designers. Hence, the City's liquidated damages claim fails for two reasons.

First, because the City's redesign went beyond correcting breaches by Jones, the City was at least partially responsible for the delays. A liquidated damages clause addressing delay in a construction contract will not be enforced "where [the] delay is due in whole or in part to the fault of the party claiming the clause's benefit." *Medema Homes, Inc. v. Lynn,* 647 P.2d 664, 667 (Colo. 1982).

Second, the City failed to apportion the total delay between optional redesign and necessary correction of Jones' defective construction. Consequently, as with actual damages, the jury would have been required to speculate as to what portion of the delay resulted from Jones' construction defects and the portion of the delay damages for which Jones was responsible. *See Boyajian v. United States,* 191 Ct.Cl. 233, 423 F.2d 1231, 1241 (1970)(although the plaintiff was at fault for some of the delay, it combined all of the defendant's alleged breaches "without in any way attempting to relate any specific damage items to any particular breach"); *see also Net Constr., Inc. v. C & C Rehab & Constr., Inc.,* 256 F.Supp.2d 350 (E.D.Pa.2003); *RPR & Assocs., Inc. v. Univ. of N.C.,* 153 N.C.App. 342, 570 S.E.2d 510 (2002).

Accordingly, we conclude that the trial court also properly directed a verdict as to liquidated delay damages.

### C. Harmless Error

Jones argues that any error in the directed verdict was harmless because the jury implicitly resolved any disputed issue in Jones' favor through its verdict for Jones on one counterclaim. In light of our conclusion that the directed verdict was proper, we need not reach this issue.

### II. *Nominal Damages, Costs, and Attorney Fees*

The City next argues that, even if it failed to establish actual damages and liquidated damages, the trial court was not justified in dismissing its breach of contract claim because a prima facie case as to Jones' breach entitled the City to at least nominal damages. The City further argues that with an award of nominal damages, it could have sought statutory costs and attorney fees under the contract by asserting that it was the prevailing party.

While we agree that the issue of nominal damages should have been submitted to the jury, we conclude the trial court's failure to do so was harmless error. We further conclude the City's potential recovery of costs and attorney fees is not properly before us and, in any event, would be barred under the net judgment rule.

### A. Nominal Damages

Viewed in the light most favorable to the City, the evidence showed Jones breached the contract. Nominal damages are recoverable for a breach of contract even if no actual damages resulted or if the amount of actual damages has not been proved. *Gen. Ins. Co. v. City of Colorado Springs,* 638 P.2d 752 (Colo.1981). Nominal damages involve an award of one dollar. *Dennis I. Spencer Contractor, Inc. v. City of Aurora,* 884 P.2d 326 (Colo.1994).

The parties cite no Colorado case, and we have found none, addressing the significance of a trial court's failure to allow the jury to consider an award of nominal damages although the plaintiff's prima facie case establishes breach.

Other jurisdictions have recognized that, "[i]n the absence of special circum-

stances the [failure to award nominal damages is] of no consequence ... and courts will not reverse a judgment simply because nominal damages were not awarded." *Sill Props., Inc. v. CMAG, Inc.,* 219 Cal.App.2d 42, 55, 33 Cal.Rptr. 155, 163 (1963); *see also Mackey v. Bd. of County Comm'rs,* 185 Kan. 139, 341 P.2d 1050 (1959); *Hecht v. Harrison,* 5 Wyo. 279, 40 P. 306 (1895).

We are persuaded by the rationale of these cases and discern no such special circumstances here. Accordingly, we conclude the error was harmless.

### B. Costs and Attorney Fees

The prevailing party is entitled to costs by statute, § 13–16–104, C.R.S.2002, and may be entitled to attorney fees by contract.

■ In announcing its decision to direct a verdict against the City, the trial court stated that it considered nominal damages, but was not allowing the jury to award them. The court then asked counsel whether they had "anything else." The City did not inform the court that the jury should be allowed to consider nominal damages because a verdict for the City on nominal damages could make it the prevailing party for purposes of recovering costs and attorney fees after trial. We do not consider issues raised for the first time on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

In any event, this aspect of the City's nominal damages argument is unpersuasive. Had the trial court allowed the jury to consider awarding the City nominal damages, at most the City could have recovered one dollar. Jones recovered $966,178 from the City on the failure to pay counterclaim.

In *Dennis I. Spencer Contractor, Inc. v. City of Aurora, supra,* the supreme court recognized, but did not firmly adopt, the "net judgment" rule, under which a party is the prevailing party only if it recovers more in damages than the opposing party. A division of this court has since concluded that the trial court did not abuse its discretion in using a net judgment analysis to determine the prevailing party. *Wheeler v. T.L. Roofing, Inc.,* 74 P.3d 499 (Colo.App.2003).

■ We agree with the division in *Wheeler* and further conclude that, on this record, determining the City to be the prevailing party on the basis of nominal damages would be an abuse of discretion.

Accordingly, we discern no reversible error concerning nominal damages, costs, or attorney fees.

### III. Economic Loss Rule

The City next argues that the trial court erred in entering summary judgment dismissing its negligence claim against Jones on the basis of the economic loss rule. We disagree.

We review a trial court's decision to grant summary judgment de novo using established standards. Summary judgment is appropriate only if the pleadings and supporting documents demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to establish that no genuine issue of material fact exists, and any doubt should be resolved against the moving party. *See Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251 (Colo.1995).

If the moving party shows no material fact exists, the nonmoving party must demonstrate the existence of a material fact. C.R.C.P. 56(e); *Sullivan v. Davis,* 172 Colo. 490, 474 P.2d 218 (1970). The nonmoving party must make this showing with admissible evidence and cannot rely on either pleadings or argument alone. *Smith v. Mehaffy,* 30 P.3d 727 (Colo.App.2000); *Bauer v. Southwest Denver Mental Health Ctr., Inc.,* 701 P.2d 114 (Colo.App.1985).

We discern no disputed issue of material fact and conclude that the trial court correctly applied the economic loss rule.

■ Under this rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo.2000).

■ The economic loss rule focuses on the source of the duty at issue. Tort duties are imposed by law without regard to any agreement. Contractual obligations arise from promises made between parties and are enforced to protect the expectancy interests created by those promises. *Town of Alma, supra.*

In *Town of Alma*, the supreme court applied the economic loss rule to preclude a negligence claim for costs of replacing defective water lines installed by a contractor. In concluding that the contractor owed no duty to the town independent of its contractual obligations, the court explained that the contract expressly assigned the contractor a duty to guarantee its quality of workmanship and materials and the contractor allegedly breached this duty. The court also noted that damages involved only the cost to repair and replace the water lines that were the subject of the contract.

Here, as in *Town of Alma*, the contract includes standards of care. The contract expressly requires that the work be "of good quality and free from faults and defects and in conformance with the Contract documents," that Jones perform in a workmanlike manner, and that Jones provide warranties guaranteeing the quality of the work and materials.

The City does not assert that, in a commercial project, a contractor has an independent duty to the owner merely by virtue of the parties' relationship. *Cf. Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983)(recognizing independent duty in construction of personal residence).

The City's affiants describe various deficiencies in Jones' construction methods, primarily mishandling of fill below the clearwell that ultimately caused wetting and destabilization of the underlying bedrock. However, Jones' contractual duties included the fill, and therefore, damage to the bedrock from breach of those duties would be attributable to Jones under the contract. Moreover, as in *Town of Alma*, the City primarily seeks the cost of rebuilding the defective structures that were the subject of the contract and consequential damages allegedly caused by the same construction practices that contributed to those defects.

Nevertheless, the City argues that three of its damage claims differ from the damages at issue in *Town of Alma*, were not the subject of the contract, and thus do not flow from Jones' breach of contract. However, "the relationship between the type of damages suffered and the availability of a tort action is inexact at best." *Town of Alma, supra*, 10 P.3d at 1263.

■ First, the City asserts that Jones damaged neighboring lands. However, according to the City's evidence, these damages could only have been caused by Jones' mishandling of fill, and therefore these damages would be consequential to the defective construction practices.

Second, the City points to resulting third-party claims against it. However, the only third-party lawsuit was dismissed with prejudice more than two years before the briefing on the summary judgment. The City's costs of defending this lawsuit would be covered by the indemnification clause in the contract.

Third, the City asserts that its damages include remediating the risk of personal injury created by certain defects in the structures. However, nothing in *Town of Alma* suggests that the supreme court contemplated an independent duty in tort whenever breach of a contractual duty creates a potential risk of personal injury.

Construction defects will often create a risk of personal injury. Hence, recognizing such a broad exception would blur the uneasy boundary between contract and tort law that *Town of Alma* sought to maintain. *See also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

Nor are we persuaded otherwise by the City's reliance on *Council of Co-Owners Atlantis Condo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336 (1986), which permitted a negligence action against builders and architects for costs to correct dangerous conditions that threatened bodily injury. The plaintiffs in *Council of Co-Owners*, a condominium association and a putative class of unit owners, were not in contractual

privity with the defendants, who had been hired by the developer, and therefore were allowed to proceed on a negligence theory.

Here, the City is in privity of contract with Jones and therefore can directly enforce Jones' contractual obligations. Contract damages for bringing a structure into compliance with contract specifications would necessarily remove the potential for personal injury. Hence, unlike in *Council of Co-Owners, supra,* 308 Md. at 35, 517 A.2d at 340, we need not consider that "the cost to the developer for a resulting tragedy could be far greater than the cost of remedying the condition." We express no opinion on the question whether *Town of Alma* prohibits a claim to remediate potential risk of personal injury by a party not in privity.

The City's attempt to avoid application of the economic loss rule based on *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961), is also unavailing. There, the plumber unsuccessfully argued that its contract was the homeowner's exclusive remedy. As explained in *Town of Alma, supra,* 10 P.3d at 1265, "Because the contract [in *Lembke*] did not address the defendant's duty of care, we found that the independent common law duty was not limited." Here, as indicated, the contract expressly addressed Jones' duty of care.

Last, the City asserts that because a clause in the contract preserved remedies available at law, the parties bargained for the assertion of tort claims. According to the City, this clause survives the economic loss rule because *Town of Alma* acknowledged that the economic loss rule would not prevent parties from contracting for broader rights and remedies. We are not persuaded.

Paragraph 13.6 of the contract states:

The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available at law. Such rights and remedies shall survive the acceptance of the Work or any termination of the Contract Documents.

This clause does not create broader rights and remedies than those established elsewhere in the contract because it does not show that Jones owed "a duty independent of any contractual obligations." *Town of Alma, supra,* 10 P.3d at 1263. Hence, the City's negligence claim is not "available at law." For this reason, the contract is not a "limitation of any duties" of Jones.

Accordingly, we conclude that the trial court properly entered summary judgment on the City's negligence claim against Jones.

### IV. *Directed Verdict for Travelers*

The City next argues that, even if the trial court properly directed a verdict in favor of Jones, the directed verdict in favor of Travelers on the City's bad faith claim was error. We disagree.

In directing the verdict for Travelers, the trial court explained that, regardless of whether Travelers handled the City's claim in bad faith, Travelers could only be liable for damages recoverable against Jones. Because in the court's view the City failed to prove damages recoverable against Jones, the City could not recover damages against Travelers.

The City asserts that this rationale has no application to its separate bad faith claim, which permits recovery of tort damages in addition to contract damages, and therefore a directed verdict should not have been entered on this claim. We affirm the directed verdict for Travelers, but expand on the trial court's rationale.

 A commercial surety that fails to act in good faith when processing claims by an obligee under a construction performance bond may be subject to a bad faith claim. *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J,* 940 P.2d 348 (Colo.1997).

 Damages for bad faith are "based upon traditional tort principles of compensation for injuries *actually* suffered." *Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 677 (Colo. 1994). Insurance bad faith litigation usually focuses on damages for emotional suffering, *Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985), which could not be recovered by the City. However, other catego-

ries of tort damages have been recognized in some bad faith cases. *See Ballow v. PHICO Ins. Co., supra; cf. Giampapa v. Am. Family Mut. Ins. Co.,* 64 P.3d 230 (Colo.2003).

Here, we need not resolve which of those damage categories may be recoverable in construction litigation over a performance bond. While the City presented sufficient evidence of bad faith by Travelers in handling the claim to survive summary judgment, the City concedes in its reply brief that it provided no evidence of any damages flowing separately from Travelers' bad faith. Instead, the City only offered evidence of costs to rebuild the structures, which are the contract damages for Travelers' alleged breach of the performance bond.

Nevertheless, the City asserts that its evidence of bad faith required the trial court to submit the issue of punitive damages to the jury. We are not persuaded.

█ Establishing bad faith breach of an insurance contract alone does not suffice to allow recovery of punitive damages. Whether the evidence warrants submission of punitive damages to the jury is a question of law. *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984).

█ Here, although the trial court did not address the punitive damages claim in directing a verdict for Travelers, we have agreed with the trial court that the City failed to prove actual damages. Hence, as a matter of law, the City cannot recover punitive damages. *See, e.g., Pulliam v. Dreiling,* 839 P.2d 521 (Colo.App.1992).

Accordingly, we conclude the trial court did not err in directing a verdict in favor of Travelers on the City's bad faith claim.

## V. *Summary Judgment for Bates*

The City next argues that the trial court erred in granting summary judgment in favor of Bates on its negligence claim. We disagree.

█ To establish negligence by a professional, the plaintiff must show: (1) duty; (2) breach of duty; (3) a causal connection between the breach and resulting injury; and

(4) damage to the plaintiff. *United Blood Servs. v. Quintana,* 827 P.2d 509 (Colo.1992).

The trial court entered summary judgment on the basis that "there is no genuine issue of material fact that the movant was not negligent and the design work it did was not a cause of any of the plaintiff's claimed damages." We discern a disputed factual issue concerning breach of duty, but nevertheless agree that summary judgment was proper for lack of evidence of causation.

█ If "facts are undisputed and reasonable minds could draw but one inference from them, causation is a question of law for the court." *Smith v. State Comp. Ins. Fund,* 749 P.2d 462, 464 (Colo.App.1987).

Bates performed design work on the clearwell, including the outlet pipe. The City asserted that Bates was accountable for water leakage from the outlet pipe which wetted the fill below the clearwell, resulting in movement of the fill and destabilization of the bedrock that damaged the clearwell.

Bates' summary judgment motion relied on testimony from the City's structural engineering expert that, "I'm not sure [Bates' design is] beneath the standard of care," and that the problem with the clearwell "was primarily determined by the—the construction of the engineering fill and the—and installation of its materials and composition."

In its response, the City cited the opinion of another expert that Bates had been negligent in certain aspects of the design. The City then pointed to its soils expert's opinion that leakage from the outlet pipe "may have resulted in damage" to the clearwell.

█ The soils expert testified that water leakage from the outlet pipe created a "hydraulic gradient" which moved fill out from underneath the clearwell. However, he did not express the specific opinion that this movement either harmed the clearwell or shortened its useful life.

█ Moreover, his "may have resulted" opinion is not sufficient evidence that Bates' alleged breach of the standard of care probably or likely caused the City injury. *See Howard v. TMW Enters., Inc.,* 32 F.Supp.2d 1244 (D.Kan.1998). Testimony as to what

may have happened does not create a genuine issue of material fact as to causation. *Sturman v. First Nat'l Bank,* 729 P.2d 667 (Wyo.1986); *cf. Rumsey's Claimants v. State Comp. Ins. Fund,* 162 Colo. 545, 427 P.2d 694 (1967).

Because we uphold the summary judgment for lack of causation evidence, we do not address Bates' argument that the deposition testimony of the City's structural engineer on standard of care constitutes an adoptive admission under CRE 801(d)(2)(B) and (D) which precludes the City from asserting a contrary position based on the testimony of Jones' expert.

Accordingly, we discern no reversible error in the summary judgment entered in favor of Bates.

## VI. *Jury Errors*

The City next argues that it is entitled to a new trial on Jones' counterclaims because, read in sequence, jury instructions 8, 9, and 10 were inconsistent, and the jury did not properly complete the verdict forms. We disagree.

## A. Instructions

According to the City, the jury could have found against Jones on its wrongful termination claim under instruction 8 because the work was not substantially completed as of the termination date, but the jury could have found for Jones on the nonpayment claim under instruction 10 because Jones had substantially performed work as of that date. This argument is not properly before us.

■■■ Parties must object to jury instructions before submission of the instructions to the jury, and "[o]nly grounds so specified shall be considered on . . . appeal." C.R.C.P. 51; *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315, 1330–31 (Colo.1996).

■■■ At trial, the City objected to instructions 8 and 10 only on the grounds they did not adequately convey that the termination had to be wrongful and that the jury could be confused as to which party had the burden of proof on the wrongful termination claim. The City did not object to instruction 9.

Because the City asserts for the first time on appeal that the sequencing of instructions 8, 9, and 10 was inconsistent, we decline to address this argument.

## B. Verdict Forms

The City's further argument that the jury's failure to complete Special Verdict Form A and failure to answer question number 1 on Verdict Form B create reversible error is unpersuasive.

■■■ We reconcile jury verdicts if at all possible. *Gutierrez v. Bussey,* 837 P.2d 272 (Colo.App.1992). A jury verdict will not be disturbed for inconsistency if a review of the record indicates any basis for the verdict. *Rose v. Colo. Factory Homes,* 10 P.3d 680 (Colo.App.2000).

Here, the instructions regarding the special verdict indicate that Special Verdict Form A did not need to be completed:

1. Do you find that the defendant Centric–Jones, is entitled to recover damages on its counterclaim for breach of contract for wrongful termination under Instruction No. 8 (yes or no)

2. Do you find that the defendant Centric–Jones, is entitled to recover damages from plaintiff City of Westminster, on it's [sic] claim of breach of contract for failure to pay under Instruction No. 10 (yes or no)

If your answer to both the above question[s] is "no," then your Foreperson shall complete only Special Verdict Form A and he or she and all jurors will sign it.

On the other hand, if your answer to one or both of the above question[s] is "yes," then you shall answer the following questions and your Foreperson shall complete only Special Verdict B, as set forth in that Verdict Form and, he or she and all jurors will sign it.

3. What is the amount of defendant Centric–Jones' damages resulting from the City's wrongful termination?

4. What is the amount of defendant Centric–Jones' damages resulting from the City's failure to pay for all work performed in accordance with the contract documents?

 

■ The jury only needed to complete Special Verdict Form A in the event that it answered "no" to both questions 1 and 2, which were the same on both special verdict forms. The jury was to complete Special Verdict Form B if it answered "yes" to either question. On Verdict Form B the jury answered "yes" to the second question. Hence, the failure to complete Special Verdict Form A was consistent with the instructions.

On Verdict Form B, the jury did not answer question 1, which dealt with Jones' wrongful termination claim. The jury answered "yes" to question 2, which dealt with Jones' failure to pay claim. The jury left question 3 blank, the amount of damages for wrongful termination, and in question 4 awarded Jones damages of $966,178 for the City's failure to pay.

Because the form instructed the jury to go directly to question 3 if it answered question 1 "yes," the jury's "yes" answer to question number 2 is consistent with the jury having decided to answer question 1 "no." A conclusion that the jury intended to answer "no" to question 1 is also supported by the fact that the jury did not award damages to Jones under question 3. Finally, even if the jury had intended to answer "yes" to question 1, this error is harmless to the City because the jury awarded no damages under question 3.

Accordingly, we discern no basis for reversal in either the instructions or the verdict forms.

## VII. *Directed Verdict for Fischbach and Reliance*

When the trial court directed a verdict in favor of Jones, it necessarily also directed a verdict in favor of Fischbach and Reliance on Jones' indemnity claims. Because we uphold the directed verdict for Jones, we also uphold the judgments for Fischbach and Reliance on Jones' indemnity claims and the award of costs to both of them.

---

## VIII. *Award of Costs to Defendants*

Finally, the City argues that the trial court erred in its award of costs to defendants. We disagree.

■ The prevailing party is entitled to recover costs under §§ 13–16–104, –105, and –113, C.R.S.2002. If a party prevails in part, "an award of costs is committed to the sole discretion of the trial court." *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 925 (Colo.App.2002); *see* § 13–16–108, C.R.S.2002.

The trial court determined that Bates and Jones were the prevailing parties. Bates prevailed on the sole claim against it. Jones recovered substantial damages from the City on its counterclaim.

The parties make no specific arguments in their briefs regarding the award of costs beyond preserving their respective positions in the event that we reversed the trial court's holdings. Because we affirm the trial court, we perceive no basis on which to disturb the trial court's discretionary award of costs.

Judgment affirmed.

Judge CASEBOLT and Judge PLANK * concur.