**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 5, 2005**

**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma corporation, | |
| Plaintiff-Appellant, | No. 04-1507 |
| v. | (D.C. No. 02-M-1990 (MJW)) (D. Colo.) |
| J.R. MISKEN INSURANCE SERVICES, INC., a California corporation; SIGNATURE UNDERWRITERS, INC., a Colorado corporation; JAMES R. MISKEN, an individual, | |
| Defendants-Appellees. | |

**ORDER AND JUDGMENT** [*]

Before **LUCERO** , **ANDERSON** , and **BRORBY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

National American Insurance Company (NAICO) appeals from the district court's findings of fact and conclusions of law, made after a bench trial in this litigation alleging breach of contract, breach of fiduciary duty, negligent misrepresentation, and constructive fraud by defendants (collectively, Misken). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

NAICO issues payment and performance bonds for construction contractors. Pursuant to a Surety Producer Agreement (SPA) effective April 1, 1999, Misken had authority to underwrite contract bonds for NAICO. This litigation involves five particular bonds underwritten by Misken: four guaranteeing performance and payment by A & B Enterprises in certain drywalling projects in Las Vegas, Nevada (the A & B Bonds), and one guaranteeing performance and payment by Tri-Vest LLC in connection with the construction of an apartment building in Medford, Oregon (the Tri-Vest Bond).

*A & B Bonds*

Robert and Asenath Kemp owned A & B Enterprises, which performed commercial painting and drywall work in Las Vegas. A & B bid on and won subcontracts for framing and drywalling at four new Las Vegas elementary

-2-

schools. Misken, on behalf of NAICO, issued four single instrument performance and payment bonds to A & B, one for each school.

The projects did not go well. The schools were prototypes, and there were numerous change orders. Because of A & B's inexperience and poor recordkeeping, the general contractor rejected many of the change orders and denied A & B payment for that additional work. Also, there may have been problems with A & B's bids, and its profit margin plummeted.

When A & B encountered cash flow problems beyond the Kemps' ability to finance, it requested that Misken consent to the release of funds by the general contractor to enable A & B to make payroll. On November 2, 2000, Misken, without NAICO's knowledge or consent, issued a consent to release contract funds on behalf of NAICO and A & B (the Consent). The general contractor duly began to release funds to A & B.

On January 11, 2001, however, the general contractor issued a notice of default to NAICO and Misken, advising that A & B was in default with certain union payments, that A & B would be removed from the jobs the following day, and that the general contractor would stop releasing funds to A & B and would replace it with another subcontractor. NAICO first learned of the Consent as a result of this notice. A sub-contractor related to the general contractor completed

the projects. Ultimately, NAICO paid approximately $2.2 million in settlement, costs, and expenses associated with the A & B projects.

*Tri-Vest Bond*

The Oregon job went more smoothly, in the sense that no claim was ever made on the Tri-Vest Bond. In that transaction, though, there was a dispute over the payment of NAICO's bond premium.

The bond arrangements were made through MBE Services, a company that assisted minority contractors. Misken underwrote a $500,000 bond that he believed covered preliminary site preparation and excavation work by Tri-Vest for a price of less than $500,000. Documents provided to NAICO showed the contract price to be $500,000. But this was incorrect; the real final contract price for the entire project was $3,031,258.

Misken received a bond payment of $10,000, two percent of $500,000, and paid NAICO its 70 percent share of the premium. When NAICO learned that the contract price for the project greatly exceeded $500,000, it argued that, under the SPA, Misken was responsible for paying NAICO its share of the entire earned premium, whether or not he received payment of any increased bond premium.

*District Court Litigation*

NAICO brought suit against Misken for breach of contract, breach of fiduciary duty, negligent misrepresentation, and constructive fraud. The district

-4-

court held a bench trial. With regard to the A & B Bonds, the district court found that NAICO had shown that Misken breached the SPA and breached a fiduciary duty to NAICO by issuing the Consent and by failing to inform NAICO about A & B's cash-flow problems in November 2000. But the district court further found that NAICO had "failed to provide any basis for apportioning losses that may be attributable to that letter from its total loss," Aplt. App. at 89, and that it had failed to show that any of the potential courses of conduct that it allegedly could have taken had it known of A & B's problems in November 2000 were sufficiently feasible to allow calculation and an award of damages. The district court entirely rejected NAICO's fraud and negligence claims.

With regard to the Tri-Vest Bond, the district court found that the owner of the project paid MBE Services a premium based on the entire contract price. It further found, though, that Misken never received the difference between the premium MBE Services received and the $10,000 premium Misken received. It held that "[t]he evidence is that someone involved in this transaction other than Misken changed documents," *id.* at 91, and that NAICO had not shown that it was ever liable for more than $500,000, as stated on the face of the issued bond. Thus, it found that NAICO's breach of contract claim for non-payment of premium failed for lack of proof.

II

Where the district court has conducted a bench trial, we review a district court's factual findings for clear error and its legal conclusions de novo. *Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist.*, 226 F.3d 1170, 1177-78 (10th Cir. 2000); *see also* Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."). "A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (quotation omitted).

On appeal, NAICO argues that the district court erred in: (1) finding that NAICO did not prove its damages from Misken's breach of contract and breach of fiduciary duty in issuing the Consent, and (2) holding that NAICO's claim for non-payment of the premium for the Tri-Vest Bond failed for lack of proof. In this diversity action, the district court applied Colorado law, and neither party has appealed that decision.

*A & B Bonds*

NAICO argues that the district court erred in finding that NAICO had not proven its damages with regard to Misken's breach of the SPA and breach of

-6-

fiduciary duty. It contends that Colorado law permits the approximation of damages where the fact of damage is certain, though the precise amount is not. It further argues that, under the SPA, "Misken is liable for all losses resulting from his misuse of authority." Aplt. Br. at 21. It then asserts that "Misken is required to indemnify NAICO for its total loss due to the violations or misuse of the power-of-attorney granted Misken in the SPA." *Id.*

In Colorado, the "plaintiff in a breach of contract action must [present] evidence of both the existence and the cause of damages." *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 477 (Colo. Ct. App. 2003), *cert. granted*, No. 03SC712, 2004 WL 2504512 (Colo. Nov. 8, 2004). "[A] claimant must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed." *Husband v. Colo. Mountain Cellars, Inc.*, 867 P.2d 57, 59-60 (Colo. Ct. App. 1993) (quotation omitted). "The plaintiff must also provide the factfinder with a reasonable basis for calculating actual damages in accordance with the relevant measure." *City of Westminster*, 100 P.3d at 477.

Moreover, "[t]o prove a claim for breach of fiduciary duty, it is the plaintiff's burden to demonstrate, inter alia, that he or she has incurred damages and that the defendant's breach of fiduciary duty was a cause of the damages sustained." *Aller v. Law Office of Carole C. Schriefer, PC*, __ P.3d __, 2005 WL

1773878, at \*2 (Colo. Ct. App. July 28, 2005). "The element of causation is satisfied when the plaintiff proves that the defendant's conduct was a substantial contributing cause of the injury." *Id.* (citing *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106, 1112 (Colo. 1987)).

NAICO's argument requires a finding that Misken's issuance of the Consent and failure to inform NAICO about A & B's cash-flow problems in November 2000 led directly to all of NAICO's expenditures on the A & B Bonds. As determined by the district court, though, it does not necessarily follow that *all* of NAICO's damages resulted from the Consent and/or the failure to inform NAICO about the need for the Consent. The district court believed that NAICO did not present it with sufficient means to determine which portion of its expenditures actually were caused by the Consent or the failure to inform. On this record, that decision was within its prerogative as the factfinder. *See Neece*, 41 F.3d at 1399-1400. Further, while NAICO's witnesses testified that NAICO could have taken certain actions to minimize its losses had it known of the issuance of the Consent before January 2001, the district court identified reasons, supported in the record, why this testimony failed to establish damages. After reviewing the appellate record, we do not believe that the district court's decision is unsupported, and we are not "left with the definite and firm conviction that a mistake has been made." *Nieto*, 268 F.3d at 1217 (quotation omitted).

Finally, NAICO argues that Misken breached his obligation to inform NAICO about A & B's credentials, and had he properly and timely informed NAICO, it might never have issued the A & B bonds in the first place, thus avoiding all loss. The district court rejected this theory, finding that the evidence did not support NAICO's position. We find no reason to disturb the district court's determination on this issue.

*Tri-Vest Bond*

NAICO also argues that, under the SPA, it is entitled to an additional premium for the Tri-Vest Bond. "Interpretation of an unambiguous contract is . . . a question of law[,]" but "when the trial court's interpretation is aided by extrinsic evidence, we review the interpretation under the clearly erroneous standard." *Sanpete Water Conservancy Dist.*, 226 F.3d at 1178 (quotation omitted).

The SPA provides that "[t]he Agent shall be responsible for the payment of all earned premiums whether or not collected." Aplt. App. at 150. NAICO argues that trial testimony established that the bond premium is properly calculated as two percent of the final contract price. Consequently, it asserts, Misken still owes NAICO its portion of a bond premium calculated according to the $3,031,258 final contract price. It contends that the district court's finding that its claim failed for lack of proof is against the evidence and must be reversed.

-9-

The SPA does not specify how a premium is to be calculated. Thus, NAICO's argument requires the district court to accept testimony presented at trial. As the factfinder in this bench trial, however, "a judge does not necessarily have to believe everything that a witness may testify to." *Neece v. IRS*, 41 F.3d 1396, 1399 (10th Cir. 1994).

Further, the district court specifically found that Misken was not aware of the discrepancies between the contract price as presented ($500,000) and the final contract price. It found that "[t]he evidence is that someone involved in this transaction other than Misken changed documents." Aplt. App. at 91. NAICO's argument on appeal, however, rests on the opposite premise, that "Misken was aware of the contract price." Aplt. Br. at 17. This court does not disturb the district court's factual findings except in cases of clear error. Here, we do not believe that the district court made unsupported findings and we are not "left with the definite and firm conviction that a mistake has been made." *Nieto*, 268 F.3d at 1217 (quotation omitted). Consequently, we will accept the factual findings of the district court. Given those findings, we do not believe that the district court erred in its judgment for Misken regarding the non-payment of the Tri-Vest premium.

III

Misken requests in its answer brief that this court determine this appeal is frivolous and assess damages and costs against NAICO under Fed. R. App. P. 38. That rule, however, requires a separately filed motion; it is not sufficient to include a request for sanctions in a brief. *See Smith v. Kitchen*, 156 F.3d 1025, 1030 (10th Cir. 1997) (citing Rule 38, advisory committee note (1994 amendment)). Accordingly, we do not address this request.

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge