24CA0822 Continental v Ball Corp 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0822
Jefferson County District Court No. 21CV30699
Honorable Tamara S. Russell, Judge

---

Continental Holdings, Inc.,

Plaintiff-Appellant,

v.

Ball Corporation and Ball Metalpack, LLC, n/k/a Sonoco Metal Packaging, LLC,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Grove and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Wheeler Trigg O'Donnell LLP, Joel S. Neckers, Shawn K. Neal, Danielle L. Trujillo, Denver, Colorado, for Plaintiff-Appellant

Steptoe & Johnson PLLC, Deva A. Solomon, Amber M. Moore, Denver, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 Plaintiff, Continental Holdings, Inc. (Continental), sued defendants, Ball Corporation and Sonoco Metal Packaging, LLC, for breach of contract. A jury found no breach, and judgment entered for defendants. Continental appeals and we affirm.

## I. Background

¶ 2 The focal point of this appeal is what effect a 1990 stock sale had on the parties' indemnification rights and obligations. There is no dispute about the events preceding the 1990 stock sale or the legal impact of those events. But the parties do contest the legal effect of the stock sale.

### A. Undisputed Pre-Stock Sale Events

¶ 3 The contract at issue was executed in 1987, before Continental existed (the 1987 contract). Under the 1987 contract, Continental Can Company, USA, Inc. (CCC-USA), sold a portion of its business, including manufacturing plants, to United States Can Company (U.S. Can). The contract included an indemnity provision under which the buyer, U.S. Can, agreed to indemnify the seller, CCC-USA, for all liabilities incurred after the closing date of June 1, 1987. The indemnification clause applied to the buyer's and seller's respective affiliates, successors, and assigns. In other words, U.S.

Can and its successors, affiliates, and assigns were obligated to indemnify CCC-USA and its successors, affiliates, and assigns.

¶ 4    At the time the 1987 contract was executed, CCC-USA had a parent company.  After the contract was executed, that parent company merged into the newly formed Continental.  Continental thus became CCC-USA's parent company.  Continental was also CCC-USA's affiliate under the 1987 contract's definition of that term (one entity was the affiliate of another if the entity controlled, was controlled by, or was under common control with that other entity).  Thus, at that time, Continental was entitled to indemnification under the 1987 contract.

B.    The 1990 Stock Sale and Subsequent Events

¶ 5    By 1990, CCC-USA had changed its name to Continental Beverage Packaging, Inc. (Continental BP).  That same year, Continental sold all its stock in Continental BP (which had been a party to the 1987 contract and was a directly indemnified party thereunder) to another company.  The central dispute in this appeal is whether Continental was still entitled to indemnification under the 1987 contract after the 1990 stock sale.

¶ 6     The liability for which Continental seeks indemnification arose when workers suffered various injuries at the businesses and plants CCC-USA had sold to U.S. Can in 1987. Some of the injured workers sued Continental for their injuries, and Continental incurred various losses in those actions. Continental sought reimbursement for those losses from defendants, claiming they were U.S. Can's successors and therefore owed Continental indemnification under the 1987 contract. Defendants refused. Continental then filed this action alleging that defendants breached the 1987 contract by refusing indemnification.

¶ 7     At trial, a jury determined that neither defendant breached the 1987 contract, and the trial court entered judgment for defendants. Thereafter, Continental moved for judgment notwithstanding the verdict (JNOV). As relevant here, Continental argued that under the undisputed facts of the case, any reasonable juror would have concluded that Continental was an indemnitee under the 1987 contract, defendants were indemnitors, and defendants breached the contract by refusing to indemnify Continental. The trial court denied the motion.

¶ 8    Continental appeals.  It argues that the court erred by (1) denying its motion for JNOV and (2) excluding evidence and refusing to give a jury instruction that would have helped the jury interpret an ambiguous contract.  We disagree with these arguments and affirm.

## II.    Motion for JNOV

¶ 9    We review de novo a court's denial of a motion for JNOV. *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 9.  In doing so, we view the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party.  *Id.* at ¶ 10.  A court should deny a motion for JNOV unless there is no evidence that could support the verdict.  *Id.*  We conclude that there was at least some evidence supporting the conclusion that Continental was not an indemnitee after the 1990 stock sale.  Accordingly, there was evidence that supported the verdict and the trial court properly denied Continental's motion.[1]

¶ 10    The parties agree that in 1990, before the stock sale, Continental was an indemnitee because it was an affiliate of its

---

[1] Based on the conclusion that Continental was not an indemnitee, we need not address whether defendants were indemnitors.

4

subsidiary, Continental BP (formerly CCC-USA). Continental argues that it remained an indemnitee after it sold all its stock in Continental BP based on the assignment provision in the 1987 contract, which imposed restrictions on how certain contract rights could be assigned.[2] According to Continental, it could not have assigned away its indemnification rights in the 1990 stock sale because it did not execute an assignment that complied with the assignment provision. We disagree because we conclude that the plain and unambiguous language of the assignment provision renders it inapplicable to Continental. *See Mid-State Indus., Ltd. v. State*, 986 N.Y.S.2d 637, 639 (App. Div. 2014) (an unambiguous contract is enforced according to the plain meaning of its terms).[3]

¶ 11     The assignment provision says: "This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns; *provided*, that neither this

---

[2] Continental does not tell us when the injuries that gave rise to the liability occurred, nor does Continental address any impact this timing has on its indemnification rights. Instead, Continental limits its argument to whether it remained an indemnitee after the 1990 stock sale. We therefore confine our analysis to only this issue.

[3] The 1987 contract provided that it was "governed by and construed in accordance with" the laws of New York.

Agreement nor any right hereunder may be assigned by a party without the consent of the other parties hereto."

¶ 12    The provision as a whole distinguishes between parties to the 1987 contract and successors and assigns of those parties. And it imposes a restriction only on a *party's* assignment of rights. Continental was not a party to the 1987 contract — indeed, Continental did not even exist in 1987. And because Continental was not a party, the assignment restrictions in the 1987 contract did not apply to it.

¶ 13    Because we conclude that Continental could transfer its indemnification rights free from the restrictions of the 1987 assignment provision, the question becomes whether there was evidence that Continental executed such a transfer in the 1990 stock sale. We conclude that there was.

¶ 14    A purchaser of a corporation's stock takes on the rights and liabilities that the stock previously conferred on the seller. *See Rochester & K.F. Land Co. v. Raymond*, 53 N.E. 507, 509 (N.Y. 1899) (when corporate stock is transferred, "the rights and liabilities of the stockholder are transferred to the purchaser"); *Cherry Green Prop. Corp. v. Wolf*, 722 N.Y.S.2d 537, 538 (App. Div.

2001) (citing *Rochester*, 53 N.E. at 509). Continental does not dispute that (1) it was an indemnitee only because it owned Continental BP's stock, thereby making it Continental BP's parent company; and (2) in the 1990 stock sale, Continental sold all its shares in Continental BP. These undisputed facts were at least some evidence that Continental sold its indemnitee status with its Continental BP stock.

¶ 15    Furthermore, there was evidence that after the 1990 stock sale, Continental no longer met the 1987 contract's definition of affiliate. Continental's expert testified at trial and agreed that after the 1990 stock sale, Continental BP was no longer "part of [Continental's] family tree." This was evidence that Continental no longer controlled Continental BP and had therefore lost its affiliate and indemnitee status.[4]

---

[4] Continental presents no argument in its opening brief about whether it qualified for indemnification as a successor. We therefore do not address this argument. *See City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 480 (Colo. App. 2003) (declining to consider arguments not raised in opening brief).

¶ 16    Thus, there was at least some evidence supporting the jury's verdict that defendants did not breach the 1987 contract because Continental was no longer an indemnitee under it.

¶ 17    Continental argues that this conclusion is contrary to the intent of the parties and absurd.  But in its principal brief, Continental does not explain where in the 1987 contract we might find evidence of this contrary intent.  Continental does not identify where the parties expressed their intent that a once-indemnified affiliate retains its indemnitee status after it ceases to qualify as an affiliate.  Similarly, we are unaware of any once-an-affiliate-always-an-affiliate provision in the 1987 contract.  Instead, as explained above, we think that under the plain, unambiguous language of the contract, Continental was no longer an indemnitee after the 1990 stock sale because it (1) transferred its indemnification rights to the stock purchaser and (2) no longer qualified as an affiliate.

¶ 18    As for Continental's contentions that this outcome is absurd, we respectfully observe that these contentions do not align with the facts of the case.  Continental writes that the jury's verdict leads to absurd results because, "although Continental is still obligated to pay for liabilities arising out of anything it sold under the 1987

Agreement . . . Continental is not entitled to indemnification for those liabilities because it sold the stock of completely unrelated business operations from those associated with the 1987 Agreement." First, Continental did not sell anything in 1987 — Continental did not exist in 1987. Second, the propriety of Continental's liabilities for which it seeks indemnification is not before us and does not inform our analysis. We address only whether there was some evidence at trial that supported a finding that Continental lost its indemnitee status in the 1990 stock sale.

¶ 19    Continental further contends that it is absurd that

> the only entity able to enforce the indemnification provisions of the 1987 [contract] would be Crown [the stock purchaser] — a party that never purchased, owned, operated, or benefitted from the businesses associated with the 1987 [contract], thus could never incur any liabilities associated with those businesses — which renders the indemnification provisions in the 1987 [contract] ineffective.

Continental seems to be saying that it is absurd to indemnify "a party that never purchased, owned, operated, or benefitted from the businesses associated with the 1987 [contract]." But if Crown is such a business, Continental is too. Like Crown, Continental

gained control of CCC-USA/Continental BP only after the latter sold the business and assets that gave rise to the liability. Suffice it to say we are not persuaded by Continental's absurdity arguments.

### III. Excluded Evidence and Rejected Jury Instructions

¶ 20 We also disagree with Continental's allegations of instructional and evidentiary error. We address them together because they share the same faulty premise: that the trial court ruled that two contract terms were ambiguous.

¶ 21 A trial court can admit extrinsic evidence of the contracting parties' intent only if the contract is ambiguous. *See Schulte Roth & Zabel LLP v. Metro. 919 3rd Ave. LLC,* 164 N.Y.S.3d 104 (App. Div. 2022). If the contract is unambiguous, extrinsic evidence of the parties' intent is inadmissible. *See Mid-State,* 986 N.Y.S.2d at 639.

¶ 22 Continental argues that the trial court ruled that the meanings of the contract terms "affiliate" and "successor" were ambiguous. Thus, according to Continental, the court erred by excluding extrinsic evidence of the contracting parties' intent and by refusing to instruct the jury on how to interpret an ambiguous contract.

¶ 23    Significantly, Continental does not explain how or why the contested terms were ambiguous. Put differently, Continental does not explain how the terms were "reasonably susceptible of more than one interpretation." *Schulte Roth & Zabel,* 164 N.Y.S.3d at 105 (citation omitted). Instead, Continental argues that *the trial court implicitly determined* the terms were ambiguous. We reject this premise and conclude that the trial court made no such ruling.

¶ 24    Continental recognizes that the trial court ruled several times during trial that the 1987 contract was unambiguous, including the terms at issue here. However, the court asked the jury to decide whether Continental *qualified* as an affiliate and whether one defendant *qualified* as a successor. According to Continental, by asking the jury to decide these issues, the court necessarily and implicitly ruled that the meanings of affiliate and successor were ambiguous. And this implicit ruling, Continental argues, rendered it error to exclude the evidence and refuse to give the jury instructions.

¶ 25    But Continental's argument conflates two issues: (1) determining whether a contract term is ambiguous and (2) applying an unambiguous contract term to the facts of the case.

The trial court asked the jury to do only the latter. And Continental provides no authority for the proposition that asking a jury to do the latter constitutes an implicit ruling that the contract term itself is ambiguous. Indeed, we are aware of none.

¶ 26    We therefore conclude that the trial court never departed from its ruling that the 1987 contract, including the meanings of affiliate and successor, was unambiguous. Consequently, extrinsic evidence of the parties' intent was inadmissible and any instruction on interpreting an ambiguous contract would have been improper.

## IV.    Disposition

¶ 27    The judgment is affirmed.

JUDGE GROVE and JUDGE BERGER concur.